## WOODS *v.* KIRK.

An agreement to pay money was made on the condition, " if the signer should get the land," described; otherwise to be void—*Held*, this condition is equivalent to " if he should acquire a valid title to the land."

A party is not estopped to show that his adversary has taken advantage of some alleged fraud or wrong to annul the contract, and that he has yielded to it.

A party is not barred to prove a just defence, because his evidence tends to prove him guilty of a fraud in relation to a matter on which his defence does not rest.

ASSUMPSIT. The second count was as follows:

" Also for that the said defendant, at said N., on the 28th day of May, 1846, by his promissory note, in writing, of that date, by him subscribed, for value received, promised the plaintiff to pay him, or order, four hundred dollars, on demand, with interest, which said note was given upon the condition that if the defendant should get the land that plaintiff's grandfather mortgaged to Judge Parker, then said note to be paid, otherwise the said note to be null and void; being land that was deeded to said Kirk, on the 28th of May, A. D. 1846; and now the plaintiff avers that said Kirk did get the land aforesaid, according to the condition expressed in said note; and although often requested, the defendant has not paid the same, but neglects it."

At the time the note mentioned in said count was given, Jonas Woods, father of the plaintiff, was in possession of the premises referred to in the condition of said note, and owner thereof, subject to a mortgage thereon. On the same

Woods *v.* Kirk.

day said note was given to the plaintiff, said Jonas Woods had duly executed a deed of said premises to the defendant, which is the deed referred to in the condition of said note. That deed was not then delivered to the defendant, but placed in the hands of a third person, to be delivered to him on the performance by him of certain acts in relation to the payment of certain claims on the premises. And no part of the consideration agreed for the premises had then been paid by the defendant, nor did it appear that any was ever paid by him afterwards.

In support of his case, the plaintiff offered in evidence a copy of said deed from Jonas Woods to the defendant, duly acknowledged and recorded, May 29, 1846, with proof that the same was recorded by the direction of the defendant, and also that the defendant, for some time after, was in possession of the premises, claiming under that deed.

To rebut this, the defendant offered evidence of statements made by the plaintiff, showing that said deed from Jonas Woods to him was not valid, on account of his not having complied with the conditions on which it was to be delivered to him, by the person in whose hands it was placed, as before stated; and also that the plaintiff shortly afterwards advised and assisted in a subsequent sale and conveyance of the premises by Jonas Woods to another party, who paid the consideration agreed therefor, on the ground that said deed to the defendant was not valid, as before stated, and in avoidance of the same; and also admissions by the plaintiff and other evidence, showing that he did not long hold the premises under said deed to him, but the subsequent purchaser held them under his deed.

The plaintiff objected to the admission of the evidence before mentioned, in relation to the invalidity of the deed to the defendant, on the ground that the defendant, having got possession of it and had it recorded, was estopped from showing his own wrong or fraud in so doing, without having

complied with the conditions on which it was to be deliv-ered to him. But the evidence was admitted.

The plaintiff also contended that the obtaining a deed from Jonas Woods, and the delivering thereof to the defen-dant, was a sufficient compliance with the condition of the note, so as to render it valid, without reference to whether the defendant thereby acquired a valid title to the interest of Jonas Woods in the premises, or any beneficial interest in them. Also that the defendant could not set up in de-fence to this action any failure to acquire such title or inter-est, arising from his neglect to comply with the conditions on which the deed was to be delivered to him, as before mentioned. And further, that the defendant, having ob-tained a deed, duly executed, of the premises from said Jonas Woods, and put said deed on record, and entered into possession of the premises under it, could not set up in defence to this action any subsequent failure to hold the premises under said deed, on account of any invalidity thereof, from his having obtained possession of it without having complied with the conditions on which it was to be delivered to him. But the court ruled otherwise, and in-structed the jury that if the defendant did not acquire a valid title to Jonas Woods' interest in the premises by the deed from him, and by reason of the invalidity of said deed, from the defendant's not having complied with the condi-tions on which it was to be delivered to him, and by reason of said Jonas Woods, on that account, electing to rescind and avoid said deed to the defendant, lost the premises, the con-dition of the note was not complied with so as to render it valid, and this action upon it could not be sustained.

A verdict being returned for the defendant, the plaintiff moved that the same be set aside, and a new trial granted, on account of error in said rulings and instructions of the court.

*A. W. Sawyer*, for the plaintiff.

Woods *v.* Kirk.

*B. F. Emerson,* for the defendant.

BELL, J. There can be no doubt that the construction given to the special agreement upon which this action is founded, by the court below, was the correct one. The condition upon which the money was to be paid, namely, " if the defendant should get the land," was equivalent to " if the defendant should acquire a valid title to the land." It could not be satisfied by his acquiring a deed, or a defeasable possession, or a defective title. The burden was upon the plaintiff to show the truth of his averment, " that said Kirk did get the land aforesaid," and if he failed to prove that fact, he failed to show any ground of action, and the defendant was entitled to a verdict in his favor. *Pendergast* v. *Meserve,* 2 Foster's Rep. 109.

The plaintiff offered no direct evidence that the land was effectually conveyed to the defendant, so that he got it, or acquired a valid title to it. He offered circumstantial evidence from which, if uncontradicted or unexplained, a jury would have been authorized, and perhaps reasonably bound to infer that he had got or acquired a valid title to the land; that is, that he had a deed of the land duly acknowledged and recorded, and that he was in possession of the land, claiming it by virtue of that deed.

This evidence was, of course, liable to be met by any competent proof of other circumstances from which a jury might rightfully draw a different conclusion. Such proof was offered by the defendant, consisting of the statements of the plaintiff that his deed was not valid, the acts of the plaintiff, expressive of the same opinion and claim, and the fact that the property was held soon after by another purchaser, under a deed made to him by the advice and assistance of the plaintiff. This evidence had clearly a natural and legitimate tendency to satisfy a jury that the defendant did not *get the land,* even if he did get a deed, and get possession.

---

Woods *v.* Kirk.

---

The objection made to this evidence was not well found-ed, either in fact or in law. This was that the defendant, having got possession of the deed, and having had it re-corded, was estopped from showing his own wrong or fraud in so doing, without having complied with the conditions on which it was to be delivered to him.

If the doctrine relied on was well founded, it constitutes no objection to the admission of the evidence offered. This evidence had no tendency to show any wrong or fraud in the defendant. Its only tendency was to show that the plaintiff denied the validity of the deed, treated it as in-valid, and that the defendant, by yielding the possession, had conceded its invalidity. As the evidence appears, it does not clearly show the ground on which the deed was claimed or allowed to be invalid; but if the evidence had shown that the plaintiff claimed it to be invalid, on the ground of the defendant's wrong or fraud, in improperly gaining possession of the deed, and causing it to be record-ed, that would not be evidence of such fraud or wrong, so as to deprive the defendant of the use of the testimony; since it is not the fraud or wrong, so alleged by the plaintiff, on which the defendant relies, but on the fact that the plain-tiff denied the validity of the deed, and took part in the acts adopted to avoid it.

Still more clearly would this doctrine fail of any applica-tion in this case, if the plaintiff's objection to the validity of the deed rested, not on the improper delivery and record-ing of the deed, but on the failure of the conditions, what-ever they were, on which the instrument was to be delivered over to the defendant. In that case, the acts of the defen-dant, complained of by the plaintiff, would be of no impor-tance to the rights of either party.

It is undoubtedly true that a party shall not be permitted to prove his own fraud, as a ground on which to rest his action or his defence. *White* v. *Hunter*, 3 Foster's Rep. 128; Story on Contracts 167.

But it is by no means true that a party who sets up a title or defence, which is honest and legal, will be debarred from proving such defence by the circumstance that his evidence tends also to prove him guilty of a fraud in some other matter. The case does not clearly show what was the nature of the wrong which it was contended the defendant was estopped to prove. But it is not true that a party is estopped to prove his own wrongful act. There are many cases where a man may rest his claim upon a wrongful act. A man may show himself a trespasser, and there is nothing here which shows that the defendant was guilty of any act of wrong of a higher grade than trespass.

It was contended that the defendant could not set up any failure to obtain a good title as a defence in this action, if his failure resulted from any act of his own; if it was attributable solely to his own neglect to comply with the conditions on which the deed was to be delivered. And in many cases this would be true. He could not exonerate himself from liability by his sole act, when the other party has done every thing incumbent on him to make the contract binding. But that hardly seems the case which the defendant's evidence seems designed to establish. He did not contend that he had a right to defeat the contract at his pleasure. His position was that the plaintiff had denounced the deed as invalid; had treated the property as if the deed was invalid; had conveyed it to a third person, who had taken possession of it. His point is, not that the defendant has avoided the deed, but that the plaintiff had elected to set it aside, so that he did not get the land.

The general doctrine is, that fraud vitiates all contracts affected by it, but fraud does not render such contracts void absolutely. It renders them voidable, liable to be set aside by the party injured, if he so elects. It may, notwithstanding the fraud, be the interest of the party designed to be defrauded to insist upon the contract.

We do not recollect any where to have seen the position

that a party is estopped to show that his adversary has taken advantage of a wrong or fraud committed against him, to annul a contract or conveyance. This is all which the defendant offered to show in this case, namely, that the plaintiff had taken advantage of an assumed fraud or wrong of the defendant to annul the deed which once had some validity or capacity of becoming effectual, so that nothing passed by it, and that the defendant had yielded to his election. This he had a right to do.

*Judgment on the verdict.*